Yes, Your Honor. Good morning, Your Honor. I'm Jeffrey Baird. Welcome back. Welcome back. Uh, may it please the court. This is a headache case. The claimant, Mr Peterson, has had migraine headaches since May of 2000 and eight, and he records them as being roughly every day and about once a week, reaching an extreme level. There's evidence from every treating physician, every emergency room visit, that the headaches are real, that the doctors believe them, and that they treat them with heavy medications up to and including narcotics, Dilaudid injections, Botox injections, et cetera. Nothing finally works. That is, the headaches continue to come back on a fairly, uh, weekly basis at a fairly extreme level. The best evidence was and that was from the headache expert, Dr Leonard, and he said, Okay, once a week, we've got to give him narcotics. He keeps coming back this. These are real. The primary reason the ALJ used to reject the lay witness and the claimant was that the neurologic findings in the record weren't bad enough. But the doctors who made those findings thought they were bad enough, and they felt he had the headaches, and they treated them accordingly with extreme medications. So we have two forms of relief we're seeking here. One is sentence four, which would be a judgment that reverses and remands or pays. Also, in the alternative, sentence six, which would be to send the case back while the district court retains jurisdiction for the agency to resolve a conflict. Namely, they found the claimant disabled the day after the ALJ's decision, based in part on the same evidence, on the same theory of disability that we offer now and that Dr Leonard offered. The claimant is simply not going to be able to maintain a schedule due to his unpredictable headaches and about once a week being out requiring narcotics. On the issue of that sentence six relief, was that raised in the district court? It was not. I was not the attorney when I found out about the pay. In good faith, I raised it in court. But I worked out a crafty good cause argument. This court reviews de novo. You don't give any deference to the case forward as a matter of right. It's in the statute. It's not because of anything other than there's a final decision. On that basis, the claimant can keep appealing all the way up to here. So the fact that the agency made this disability determination after the appeals counsel's action means we're now in the court phase and we are in time in the court phase to say this later evidence shows a basis for sentence six remand and you would have discretion. Was there any dispute in the record that your client was frequently absent from work? Right early on. Remember that's Dr. Bley. That's very early on in May of 2000. In asking the question, I mean no judgment about the condition or whatever, but it is a fact that he was frequently absent from work. It was that it was due to these severe headaches. Right. And you've pointed to the medical evidence which which you argue backs that up. There was a vocational expert. Right. And was the vocational expert asked about your clients frequent absences? Well the hypothetical question was how many days a month can he be absent and sustain work and it was one day. And I thought it was a little over redundant as I reread the briefs, but if he's absent more than one day a month, the R1 level jobs, reasoning level one jobs that were found for him would vanish. He wouldn't be employable if he's absent more than one day a month. So as I understand what you're telling us, when the Commissioner or when the VE was asked his hypothetical, the absenteeism was not did testify, but when the hypothetical, the ALJ set the hypothetical, the absences was not involved in that hypothetical, was it? Correct. But it was afterwards that counsel under cross-exam, if you will, inserted the absences as part of what the VE was to testify about, correct? Correct. Did the ALJ ever agree or not agree with what happened there? Well the ALJ used his own hypothetical in the final, her own hypothetical in the final decision. So she didn't use that testimony. She used her own. It seems to me that, I mean and I'm trying to get this straight, seems to me that when we had the, we had the hypothetical set by the ALJ, there was no nothing in there about absenteeism. Then afterwards with VE still on the stand, then the attorney questioned about absenteeism, how it would affect the job market, and could not miss more than one day a month was the answer, right? Correct. Did the ALJ ever agree or not agree with that testimony? The ALJ made no comment about that testimony. But she, you saw. So if the ALJ made no comment about it, should we remand because that's a mistake? I think you should remand. I think this is what I'm asking. Yeah. Could you go to other issues which I'm not sure. Okay. I'm just concentrating on this particular issue. The ALJ did not reject the one day, the greater than one day. Did not agree and did not disagree. Did not agree or disagree, except in her own RFC assessment she didn't include it. So she relied on her own RFC assessment. My argument is it's deficient because the claimant is credible, certainly to the extent the doctors agree, he's going to be down with narcotics one day a week. That's going to add up to more than one day a month of absence. In giving her RFC assessment, the ALJ did not say I disagree with the VE? Correct. The ALJ never disagreed with the VE on that. Let me frame, if I may, an abundance of relief possibly subject to the government's position. Can we give relief both on sending it back to the ALJ to say whether, clarify, whether the ALJ agrees or doesn't agree with the one day a week, one day a month of absence, or more than that would preclude jobs, and also send it back under Luna Section 6? I think you can't do that. You could do either a Sentence 4 or a Sentence 6 because the jurisdiction would shift. Under Sentence 4, the agency would resume jurisdiction to complete further proceedings. Under Sentence 6, the district court would hold jurisdiction while the agency resolves conflicts or conducts further proceedings under the guidance of the district court. So I don't think you could do both Sentence 4 and Sentence 6. Are we talking now in terms of disability benefits about the gap? Well, he is being paid as of the day after the ALJ's decision, and my argument under Sentence 6 is that that's a contradiction because the agency's own doctors used the same evidence to make that finding as they did to deny. He's presently receiving benefits based on the second application, is that correct? That's correct. What's the gap? How long is it? Well, one day apart. He was awarded benefits as of the day after the ALJ's decision. In that sense, it's like the Luna case. That would be a basis for a Sentence 6 remand. So the gap is one day? One day. But how much? They used the same evidence. At least for what period of time did he not get benefits? That would be from May 2008 until March 2011. That would be from the alleged onset date until the ALJ's decision date. Okay, which is what I thought perhaps Judge Hawkins... That's the gap. Oh, that's okay. I'm sorry. Yeah. No, he's fighting... From May of 2008 until July? March 2011. March. That's right. That's the gap that he fails to get because of this proceeding, which was corrected in the second proceeding immediately thereafter. Right. This is dealing with that first proceeding. Okay. I don't know if you want to save some... Yeah, I'll save some time for rebuttal. It may get tricky. I'm sure the government will have a few. Okay, thank you. Okay, for the government we have Heather Griffin, if I've got that right. Daphne Benet. Good morning, Your Honors. I'm Daphne Benet, appearing for Commissioner of Social Security. There's a switch right in front of you if you'd like to lower the podium. Sometimes advocates think that they're like the little kid at the dinner table. Stacey can show you how to do that. And I apologize. Benet, I was looking at the wrong... Thank you. Is that better for you? Yes, thank you, Your Honors. Again, Daphne Benet, appearing for Commissioner of Social Security. First of all, with regard to Luna issue, we believe, the government believes, that defendant has waived that issue because it was not raised before the district court. Also, none of the three exceptions to the waiver rule apply here. I'd like to respond to the argument that appellant just made as his imaginative explanation of why it didn't have to be raised in the district court. That he didn't have to raise it in the district court. And he just argued to us that he didn't have to because of the nature of the jurisdiction. No, I believe he had to raise it, Your Honor, because the disability, the subsequent disability determination in this case was in a initial determination from April 2013 and he was found disabled beginning the day after the ALJ's decision on March 31st. So, you're about to tell us why his argument is no good, but you've stopped. If he didn't waive it in the, if he didn't waive it, why can't he? He did waive it in the district court. Well, I believe he did waive it. It wasn't made. I'm sorry, Your Honor. So then, why can't he raise it here based on the exceptions? Okay, so, trying to answer all of your questions here. The reason I believe it's waived is because the report and recommendation, the objections here were filed on 6-6-13. The initial determination finding him disabled was April 2013. That was not raised at that point in district court and it wasn't completed. What's your argument that the exceptions don't apply? Okay, the exceptions do not apply here because, and this is set forth in our supplement response to the motion on page 6, it's a purely legal issue that either does not depend on the factual record or depends on a fully developed record. Here, this is not a purely legal issue. Even Luna, the court noted that the district court had remanded for resolution of factual issues pursuant to USC section, sentence 6, and that's Luna 623 F 3rd 1032 at 1035. So, it would depend on the factual record here. Second of all, this does not preserve the integrity of the judicial process. This could have been raised at the district court level. It was not. This resulted in piecemeal litigation and, a matter of court and the government could have been spending on another claimant's case. And then, there was no change in law during the pendency of the appeal. In terms of the assertion that it was based on the same evidence, I would like to direct your attention to defendant's briefing on page 12 in response to the motion to supplement. And, although it did refer to a July 2009 and fiscal and mental examination, those findings appeared to be normal. And, in any event, it largely relied on new and different evidence. This would prejudice the agency if you are to look at the determination. A non-examining state agency psychologist reviewed this. The determination, and this is the attachment at page 5 of plaintiff's motion to supplement, it references the ALJ decision on 330 2011. They're aware of it on page 7. Also, they refer to the on page 12, you have a worsening of his condition in terms of concentration persistence limitations from the prior ALJ decision. The relevant time period here is from his alleged onset date in May 2008 through the ALJ's March 30th 2011 decision. This is outside of it. The claimant in this case filed for benefits in May of 08, is that right? Yes, I believe so. Let me quickly look at the, I have that. If he had prevailed at that, if he had prevailed at that point, would his benefits have been in the date of application? It would have, he would have been entitled to have started 12, 12, 12 months before that. It would even go back further? Right, but of course that would have to be through the processing folks to see, you know, in terms of if, it might be of that date or it might be a little bit later. It just depends on eligibility. It would be no later than the date that he first applied? I believe so. Okay. Yeah. And, in the initial application, the ALJ made the determination that was made, and then the next day the Appeals Council awarded benefits? That, that was in the Appeals Council. That was the, at the initial level, which means that a state agency physician was involved. In the interim, there had been a second application? Right, and, and the application was filed on, on page, page two of our response to the motion to supplement? And, and that determination? Because he filed, he filed an application, the subsequent application on January 13, 2013. So, and they set the onset of benefits one day after the denial of the initial application? There's a difference between his onset of disability date, which in this case they had as March 31st, 2013. Disability, their onset date of disability is not necessarily the same thing as when you find to be eligible for benefits. It depends on many factors, but the earliest you could have been paid for on that finding a disability as of the onset date of March 31st is a year, a year The decision maker that awarded benefits on the second application was powerless to move the date of onset of benefits back in time? Right, because that goes through Social Security processing. That's an eligibility determination, Your Honor. I got you. I would like to say in terms of the, in terms of the ALJ not addressing the, the, the VE's testimony response to, you know, missing more than one day of work, we addressed in our briefing at pages 19 through 24 that the VE's testimony doesn't set the disability standard and it's up to the ALJ to determine a claimant's limitations and then propound those in a hypothetical. And I believe that this court's recent case of Breton versus Colvin actually is on point where the ALJ there did not expressly account for and this court said that, um, that there wasn't substantial evidence to support that because there was no independent medical evidence that substantiated her allegations of limitations and the court did not find error there. And that's Breton versus Colvin, 787 F 3rd 10 11. Is that in your brief? No, that came out after my briefing on this case. And while I was filing 28 J letter? No, I, I was preparing for this argument on and reviewing the court's most recent case with argument. Would you get a slip from Stacy? Yes, your honor. Clark and file it out and provide a copy of the citation to your opponent? Yes, your honor. Thank you. Um, and so, um, our position here is there was no error. And I think that what the district court said here was very instructive because the ALJ did reject his allegations of having headache limitations to the extent that he was incapable of all work activity. And that's on page 28 of the ALJ's decision. So, so you're arguing, sorry, Judge Gould, you had a question. Just kind of a simple one. Sorry. If the ALJ did not consider the issue of impact of absenteeism in this hypothetical, is that an error that requires it to go back? I don't believe so. Because in the end, if you look at the ALJ's decision at page 28, he talks, the ALJ talks about, he testified about needing to take time off from his headaches but was unable to return because his condition worsened. And then the ALJ finds his allegations on page 28. The claimant believes he's incapable of all work activity but the record shows the claimant's not as debilitated as he alleges. And then on page 29 of the ALJ. But, but really you are addressing a different issue, aren't you here? Because what the VE is doing is the VE is taking all of these conditions now that the ALJ now thinks are important in the job that this particular person can do. And if in fact the hypothetical isn't the right hypothetical, then the VE's testimony as to the job that needs to be done cannot be correct. And in this particular issue, the VE did not have in it anything about absences of work due, periodic absences of work due to and then counsel comes forth and says, well what about absenteeism and how can that affect the job market? And the VE says, could not miss more than one day of work per month. And then the ALJ doesn't say anything one way or the other. They don't say, ALJ doesn't say, I agree, I don't agree, I accept the testimony, I don't accept the testimony. So we don't know what the ALJ was thinking. And the testimony or the references you're making don't have anything to do with this question. Well, Your Honor, substantial evidence has to support that limitation. And if you look at the claimant's testimony and the record at ER 4647, he didn't specifically testify that his headaches caused him to miss more than one day of work. And he doesn't have his, Dr. Leonard did not state that, and plaintiff does not point to an opinion by a doctor that that was in fact the case that would render him unable to work for a one-year period to meet the definition of disability. All you're arguing is there's contrary testimony in the record that would make the one day, as I understand it, of work per month maybe not applicable. But still, that still leaves me with the idea, if I'm supposed to be giving the ALJ some deference, what do I give the ALJ some deference about? Because he never tells me. Well, just taking a step back from the government's perspective, there has to be substantial evidence in support of this limitation. And the government's position is there hasn't been. Well, all the ALJ had to say is there's no substantial evidence to support this and I'm not accepting it. And then I can say, okay, you're right. Well, when I don't have anything, I don't have the ALJ suggesting. That's like going to the jury with the ultimate question and having them say guilty or not guilty and they don't say anything. And then I'm supposed to sustain or not. I'm trying to figure out how do I go there? There's nothing saying that the ALJ can't reject and nothing saying the ALJ must accept. The ALJ's got to determine. And they didn't. He didn't. So she. Yeah, she didn't. Well, again, my answer to that, Your Honor, is there has to be substantial evidence for that limitation and plaintiff hasn't produced that. So the ALJ did not have to include that as a limitation in the hypothetical. Okay. Thank you. Thank you. Thank you, counsel. Thank you very much. Dr. Leonard made findings and a conclusion that would be consistent with more than one day a month of work. Once a week requiring narcotics to resolve the headaches. That's persistent throughout the record. The lay witness, which I argue the ALJ did not correctly reject, independently said it's about once a week he goes down so bad he needs the narcotics from the headaches. That's his wife. She sees him every day. She didn't overstate the claim. She didn't parrot anything. She said something that a doctor independently identified. One day a week he needs the narcotics. It's a reasonable inference, almost a compelled inference, that on a regular, sustained basis he's not going to be going to work every day. The VE's testimony was uncontroverted. So it stands as evidence of record that the ALJ did not reject. The ALJ is not a vocational expert. Now the ALJ can adopt or not adopt certain hypothetical questions. But what the ALJ did here was simply say in the RFC no comment on missed days of work. So the ALJ's RFC, we argue, is deficient. And there's lots of cases that say that you'd have to remand under Lingenfelter and some of the other cases because the RFC and the hypothetical is not complete. The RFC is not complete. It's missing the one day of absence. On the Luna issue, the sentence six, perhaps I was too clever by half, but the argument again is you have review, appeal comes forward as a matter of right, you have de novo review, and the integrity of the judicial process is preserved if you use your discretion to send it back under sentence six. Because the agency has made two disability findings that are incompatible based in part on the same evidence. One day apart. That's it. Thank you very much. Thank you, counsel. Okay, the Peterson versus
judges: Hawkins, Gould, Smith